# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MATTHEW WARMAN | : | Appeal No: 24-3042 |
| Plaintiff-Appellant, | : | |
| | : | Trial No. 1:22-cv-229-TBS |
| v. | : | |
| | : | |
| MOUNT ST. JOSEPH UNIVERSITY, ET AL. | : | |
| Defendants-Appellees. | : | |

## MERIT BREIF OF APPELLEES

Ilana L. Linder     (0095622)
Timothy M. Burke (0009189)
Micah E. Kamrass   (0092756)
**MANLEY BURKE, LPA**
225 W. Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
ilana.linder@manleyburke.com
tburke@manleyburke.com
mkamrass@manleyburke.com

**COUNSEL FOR APPELLEES**

Ronald A. Berutti
**MURRAY-NOLAN BERUTTI LLP**
100 E. Hanover Avenue
Suite 401
Cedar Knolls, New Jersey 07927
Phone: (908) 588-2111
ron@murray-nolanberutti.com

Matthew S. Okiishi
**FINNEY LAW FIRM, LLC**
4270 Ivy Pointe Blvd., Ste 225
Cincinnati, Ohio 45245
Phone: (513) 943-6659
matt@finneylawfirm.com

**COUNSEL FOR APPELLANTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................2

TABLE OF AUTHORITIES........................................................................3

CORPORATE DISCLOSURE STATEMENT .....................................5

SUMMARY OF ARGUMENT ....................................................................6

ARGUMENT AND CITATION OF AUTHORITY ..............................6

   **I. The District Court Did Not Err in Dismissing Mr. Warman's Second Amended Complaint Under Rule 12(B)(6)**..........................................................6

     a. Standard of Review......................................................................6

     b. Mr. Warman's Brief Fails to Address the Complaint's Reliance on Impermissible Group Pleading ...............................................................7

     c. The MSJPD is Not Sui Juris. .......................................................8

     d. Mr. Warman Failed to Allege Any State Action Related to Implementation and Enforcement of the COVID-19 Vaccination Policy, and Therefore He Cannot Maintain Any of His Section 1983 Claims. ..........................................10

     e. Mr. Warman Failed to Plausibly Allege That Officers Koopman and Koo Violated His Fourth Amendment Rights. ..........................................13

     f. Mr. Warman Failed to State a Plausible Claim Under the Rehabilitation Act. ................................................................................................18

     g. Mr. Warman Failed to State a Plausible Claim Under the Equal Protection Clause of the Fourteenth Amendment. ..................................21

   **II. The District Court Did Not Abuse its Discretion By Granting Appellees' Motion to Dismiss Without First Allowing Mr. Warman to Further Amend His Complaint Following His Second Amended Complaint**..........................22

     **a.** Standard of Review......................................................................22

     b. The District Court Was Not Required to Grant Mr. Warman Further Leave to Amend. ............................................................................................22

CONCLUSION..............................................................................................26

CERTIFICATE OF SERVICE..................................................................27

CERTIFICATE OF COMPLIANCE........................................................27

ADDENDUM .................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...............................................................7

*Becker v. City Univ. of Seattle*, 723 F. Supp. 2d 807 (E.D. Pa. 2010) ...................12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...............................................7

*Bishop v. Univ. of Scranton*, No. 3:22-cv-01831, 2023 WL 4565468 (M.D. Pa. July 17, 2023)...............................................................................12

*Bowen v. Am. Hosp. Ass'n.*, 476 U.S. 610 (1986)...............................................20

*Brown v. Chapman*, 814 F.3d 436 (6th Cir. 2016)...............................................23

*California v. Hodari, D.*, 111 S. Ct. 1547 (1991) ...............................................14

*Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003) ...............................................12

*Ciraci v. J.M. Smucker Co.*, No. 5:21-cv-02347-JRA, 2022 WL 1170421 (N.D. Ohio April 20, 2022) ...............................................................................13

*Clinkscale v. Temple Univ.*, No. 19-CV-1026, 2019 WL 4959406 (E.D. Pa. Oct. 7, 2019)...............................................................................13

*Collins v. Tyson Foods, Inc.*, 665 F. Supp. 3d 845  (W.D. Ky. 2023) ...................11

*Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369 (6th Cir. 2009)...23

*Conley v. Gibson*, 355 U.S. 41 (1957)...............................................................6

*Crosby v. Twitter, Inc.,* 921 F.3d 617 (6th Cir. 2019)...............................................23

*Desyllas v. Bernstine,* 351 F.3d 934 (9th Cir. 2003)...............................................15

*Everson v. Leis,* 556 F.3d 484 (6th Cir. 2009) ...............................................10

*Fleck v. Trustees of Univ. of Penn.*, 995 F. Supp. 2d 390 (E.D. Penn. 2014) ...........9

*Foman v. Davis*, 371 U.S. 178 (1962)...............................................................23

*Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998)...............................................18

*I.N.S. v. Delgado*, 466 U.S. 210 (1984)...............................................................15

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012) ...............24

*Kisela v. Hughes,* 584 U.S. 100 (2018)...............................................................17

*Kohus v. Ohio State Highway Patrol*, No. 1:09-cv-658, 2011 U.S. Dist. LEXIS 32721 (S.D. Ohio Feb. 15, 2011) ...............................................................................8

*Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22 (1st Cir. 2002) ...........................12

*McMichael v. James Island Charter Sch.*, 840 F. App'x 723 (4th Cir. 2020) ........17

*NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462 (6th Cir. 2005)...............................................................................7

*Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988)...................24

*S.E. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666 (6th Cir. 2006)...............6

*Sarkadi v. Ohio Casino Control Comm.*, No. 2:20-cv-1316, 2021 U.S. Dist. LEXIS 155594 (S.D. Ohio Aug. 18, 2021) ....................................................................7, 8

*Se. Cmty. Coll. v. Davis*, 442 U.S. 397 (1979) ........................................................20

*Shaikh v. Lincoln Mem'l Univ.,* 608 F. App'x 349 (6th Cir. 2015)........................20

*Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037 (6th Cir. 1991) ....................22, 23

*Snyder v. United States*, 990 F. Supp. 2d 818 (S.D. Ohio 2014) ...........................21

*Souders v. Mount St. Joseph Univ.*, No. 1:15-cv-429, 2016 U.S. Dist. LEXIS 66649 (S.D. Ohio Mar. 11, 2016)....................................................................................12

*State v. Gilliam*, 292 Neb. 770 (2016)....................................................................17

*Terry v. Ohio*, 392 U.S. 1 (1968)............................................................................14

*Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021) ..........................................................................................................................19

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545 (6th Cir. 2008) ......................23

*United States v. Mendenhall*, 446 U.S. 544 (1980)..................................................14

*United States v. Morgan*, 936 F.2d 1561 (10th Cir. 1991)......................................15

*United States v. Richardson*, 949 F.2d 851 (6th Cir. 1991) .............................13, 14

*WCI, Inc. v. Ohio Dept. of Public Safety*, 774 F. App'x 959 (6th Cir. 2019) .........21

*Weakley v. Homeland Sec. Sols., Inc.*, No. 3:14CV785 (REP-RCY), 2015 U.S. Dist. LEXIS 79350 (E.D. Va. May 19, 2015)............................................................24

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1(a), Defendants-Appellees, Mount St. Joseph University ("MSJ" or the "University"), Mount St. Joseph Police Department ("MSJPD"), Kevin Koo, Norb Koopman, Sr., Karen Elliott, Amy Metzger (Demko), Paige Ellerman, and Nancy Hinzman (collectively, the "Appellees"), state:

(1) None of the Appellees are a subsidiary or affiliate of a publicly owned corporation; and

(2) There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

## SUMMARY OF ARGUMENT

The district court did not error in dismissing Mr. Warman's Second Amended Complaint Under Rule 12(B)(6). Further, the district court did not abuse its discretion by denying him further leave to amend after his Second Amended Complaint because justice did not require further amendment.

## ARGUMENT AND CITATION OF AUTHORITY

**I.      The District Court Did Not Err in Dismissing Mr. Warman's Second Amended Complaint Under Rule 12(B)(6).**

a. Standard of Review

A dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is reviewed *de novo*. *S.E. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 671 (6th Cir. 2006).

To survive the 12(b)(6) motion, Mr. Warman's complaint must allege facts which, if proved, would entitle him to relief. *Id.* at 671 (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). A court construes the complaint in the light most favorable to a plaintiff, accepting the complaint's factual allegations as true, and determining whether that party can prove no set of facts in support of its claims that would entitle it to relief. *Id.* While this is a liberal pleading standard, "it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery

6

under some viable legal theory." *Id.* at 671–72 (quoting *NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005)).

In this case, Mr. Warman had multiple opportunities to correct the problems in his initial complaint. It was only after Mr. Warman's Second Amended Complaint failed to address those deficiencies that the trial court granted Appellees' Motion and dismissed the matter under Rule 12(B)(6).

b. Mr. Warman's Brief Fails to Address the Complaint's Reliance on Impermissible Group Pleading

Mr. Warman's Brief wholly ignores that the Second Amended Complaint (the "Complaint") was dismissed, in whole or in part, due to impermissible group pleading. Throughout each version of his Complaint, Mr. Warman indiscriminately refers to all MSJ Defendants as "Defendants," using vague phrases such as "Defendants, or some of them," "Defendants in one or several combinations," and "perhaps other defendants" without specifying which individual Defendant(s) engaged in what specific behaviors.

Complaints that fail to provide specific acts by specific parties fail the *Iqbal* and *Twombly* pleading test. *See generally Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). For example, in *Sarkadi v. Ohio Casino Control Commission*, No. 2:20-cv-1316, 2021 U.S. Dist. LEXIS 155594 (S.D. Ohio Aug. 18, 2021), the plaintiff named fourteen defendants but failed to distinguish between them, instead alleging actions by the "Defendants" or the "individual

defendants." The court found that this collective reference did not satisfy federal pleading standards, resulting in the dismissal of the complaint. *Id.* at *15, **26. Similarly, in *Kohus v. Ohio State Highway Patrol*, No. 1:09-cv-658, 2011 U.S. Dist. LEXIS 32721 (S.D. Ohio Feb. 15, 2011), a complaint was dismissed because the plaintiff alleged constitutional violations by "the defendants" without specifying individual actions.

Here, even after the trial court provided the opportunity for Mr. Warman to do so, he repeatedly failed to specify actions by each individual MSJ Defendant following Appellees' first Motion to Dismiss that highlighted these deficiencies. As Mr. Warman declined to address this issue in his Second Amended Complaint, dismissal was appropriate.

c.  <u>The MSJPD is Not Sui Juris.</u>

Ignoring existing precedent cited by Appellees and the district court, Mr. Warman maintains that the MSJ Police Department ("MSJPD") is *sui juris*, and therefore a properly named defendant, because the MSJPD acts as a "public office." (App. Doc. 35, P. 24.) However, whether the MSJPD is a state actor is irrelevant to its status as a separate entity capable of being sued. Mr. Warman seems to miss the point: his claims against the MSJPD were dismissed simply because he failed to identify the proper party.

Legal claims involving campus police must be directed against the university and individual officers, not the police department itself. *See Fleck v. Trs. of Univ. of Penn.*, 995 F. Supp. 2d 390, 402 (E.D. Penn. 2014) (stating that the private university's police department "is not an entity capable of being sued," and instead, the "university itself" is the proper defendant).

Here, the majority of Mr. Warman's claims taking issue with the police department were asserted against *both* MSJ and the MSJPD. Indeed, Mr. Warman's ability to pursue Counts One through Eight, along with Counts Twelve through Fifteen, of the Complaint were in no way impacted by the MSJPD's dismissal as an improperly named defendant; to the extent liability was to be imposed on account of any misconduct by the MSJPD, that liability would be attributed to the University. Consequently, only Counts Nine (Tortious Interference with Contract) and Sixteen (Section 1983 Wrongful Arrest/Detention) were *potentially* impacted by the MSJPD's dismissal, as they were the only two claims Mr. Warman asserted against the MSJPD, but not also the University.[1]

---

[1] Because these two claims were also asserted against other Defendants, including officers Koopman and Koo, there was still an opportunity for Mr. Warman to attempt to pursue these theories of legal liability, even without the MSJPD being named.

Although Mr. Warman reasserted his tortious interference claim after initially conceding it,[2] he nonetheless seems to recognize that he could not possibly assert both a breach of contract and tortious interference claim against the same party. Consequently, the only remaining claim substantively impacted by the MSJPD's dismissal was Count Sixteen. Curiously, Mr. Warman offers no explanation for why he elected not to assert Count Sixteen against the University, and therefore must now accept the result of his failure to properly identify the parties to whom potential liability can attach.

   d. <u>Mr. Warman Failed to Allege Any State Action Related to Implementation and Enforcement of the COVID-19 Vaccination Policy, and Therefore He Cannot Maintain Any of His Section 1983 Claims.</u>

Mr. Warman's Complaint alleges all MSJ Defendants violated his constitutional rights by denying his religious COVID-19 exemption request. However, to sustain a claim under Section 1983 for any constitutional violation, a party must first establish that the alleged wrongdoers are state actors. *Everson v. Leis,* 556 F.3d 484, 493 (6th Cir. 2009). That cannot be done in this case in that MSJ was not a state actor in adopting and administering its Covid vaccination policy.

---

[2] *See Pl.s' Response in Opp. to Motion to Dismiss*, R. 15, PAGE ID # 242 n. 3 (conceding the propriety of dismissing Mr. Warman's claims alleging (1) federal conspiracy; (2) tortious interference with contract; and (3) breach of covenant of good faith and fair dealing).

As the district court noted, "Sixth Circuit courts have found [that] private companies were not state actors when establishing COVID-19 vaccine mandates." (Order Granting in Part Defendants' Motion to Dismiss, R. 37, PAGE ID # 698) (quoting *Collins v. Tyson Foods, Inc.*, 665 F. Supp. 3d 845, 851–52 (W.D. Ky. 2023)). In each of those Sixth Circuit cases, "the courts utilized three state actor tests—public function, state compulsion, and nexus tests—and found that the plaintiffs failed to sufficiently show the vaccine mandate amounted to state action." *Collins*, 665 F. Supp. 3d at 852.

Here, rather than dispute the district court's conclusion that none of the three state actor tests support Mr. Warman's attempt to convert the private MSJ Defendants into state actors, he simply states, "application of such tests is irrelevant." (App. Doc. 35, P. 18.)

Curiously, Mr. Warman then proceeds to tangentially discuss the "public function" test by writing:

> Mr. Warman alleges that the MSJU Defendants became state actors by virtue of having their private mandate enforced through state actors Koopman and Koo… In so doing, the MSJU Defendants…were exercising powers that were "fairly attributable to the state" because in controlling and directing state actors, they exercised "powers which are traditionally exclusively reserved to the state."

(*Id.* at 18.)

11

The public function test has rarely been used to find state action on the part of a private actor. *See Chapman v. Higbee Co.*, 319 F.3d 825, 833–34 (6th Cir. 2003). And even putting aside the fact that Mr. Warman never explained what such "enforcement" entailed, he never asserts what specific "powers" that are traditionally reserved to the state were involved in this situation, as Appellant knows, or should know, no such powers exist. Indeed, the provision of higher education, let alone the creation and maintenance of graduate nursing programs or clinical rotation programs, has never been a function traditionally and exclusively reserved for the state. *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002); *see also Bishop v. Univ. of Scranton*, No. 3:22-cv-01831, 2023 WL 4565468 (M.D. Pa. July 17, 2023), *3 (citing *Becker v. City Univ. of Seattle*, 723 F. Supp. 2d 807, 811 (E.D. Pa. 2010)); *Souders v. Mount St. Joseph Univ.*, No. 1:15-cv-429, 2016 U.S. Dist. LEXIS 66649, at *19 (S.D. Ohio Mar. 11, 2016) (holding that while the University's police department could be performing a public function when performing traditional law enforcement services for the school, the performance of personnel decisions within the department do not meet the public function test).

Because conclusory statements cannot be used to survive dismissal, the district court's decision should be affirmed, as Mr. Warman offered no support to find any of the MSJ Defendants acted under color of state law with respect to

implementing a COVID-19 vaccination policy or encouraging compliance with that policy.

    e. <u>Mr. Warman Failed to Plausibly Allege That Officers Koopman and Koo Violated His Fourth Amendment Rights.</u>

The basis for Mr. Warman's Fourth Amendment[3] claim against Defendants Koopman and Koo, two MSJ police officers,[4] appear to be rooted in either (1) the officers' conversations inside the MSJPD with Mr. Warman about his decision to remain unvaccinated, or (2) observations the officers had of Mr. Warman while he was on the MSJ campus. As Mr. Warman fail to establish any Fourth Amendment violation, dismissal of such claims was appropriate.

The district court correctly noted that applicable safeguards of the Fourth Amendment, "with respect to police/citizen contact, will vest only after [a] citizen has been seized." *United States v. Richardson*, 949 F.2d 851, 855 (6th Cir. 1991)

---

[3] Although Mr. Warman's Brief states that "Koopman and Koo violated Mr. Warman's Fourth *and Fourteenth* Amendment Rights," it only addresses the alleged *seizure*, which is a required element to establish a violation of the Fourth Amendment. (Emphasis added.) As there is no substantive discussion of either a procedural due process or equal protection claim contained within Part 1(B) of Appellant's Brief, Appellees do not address the Fourteenth Amendment in this section.

[4] The Complaint alleges that MSJ "was a state actor with respect to the actions of its police department, which was under its dominion and control." (R. 18, PAGE ID #312, ¶ 7.) This statement alone is insufficient to convert the otherwise private university into a state actor. Rather, as explained in *Clinkscale v. Temple Univ.*, No. 19-CV-1026, 2019 WL 4959406, at *4 (E.D. Pa. Oct. 7, 2019), to properly assert federal liability against a private university that employs police officers, a plaintiff must establish that the university "had a policy or custom condoning or facilitating police harassment or brutality." *See also Ciraci v. J.M. Smucker Co.*, No. 5:21-cv-02347-JRA, 2022 WL 1170421 (N.D. Ohio April 20, 2022).

(citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). A potentially unlawful seizure occurs where, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. And a seizure will not occur unless the officer, "by means of physical force or show of authority" in some way "restrain[s] the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

As this Court previously explained, the "test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Richardson*, 949 F.2d at 855 (quoting *California v. Hodari, D.*, 111 S. Ct. 1547, 1551 (1991)). When considering whether a reasonable person would conclude he was not free to leave, the following factors are relevant: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (quoting *Mendenahll*, 445 U.S. at 554).

Courts will not conclude that an individual was detained or otherwise confined when there is no assertion, let alone evidence, to establish that the individual would have been prevented from leaving had he tried to do so. *Williams v. Franklin Cnty. Bd. of Comm'rs.*, 145 Ohio App.3d 530 (2001); *see also I.N.S. v. Delgado*, 466 U.S.

14

210, 216 (1984) (clarifying there is no requirement that police tell citizens they are free not to respond in order to make an encounter consensual, even if the citizen is unaware that he may ignore the police in a given situation); *Desyllas v. Bernstine*, 351 F.3d 934, 940 (9th Cir. 2003) (finding no unlawful seizure where state officials never told the student he could leave, but the student never asked to leave). And when a person voluntarily cooperates in response to non-coercive questioning, there is no seizure, and therefore no constitutional issue. *United States v. Morgan*, 936 F.2d 1561, 1566 (10th Cir. 1991).

Here, the manner in which Appellees Koo and Koopman interacted with Mr. Warman, both inside the MSJPD and around campus, reflects the consensual nature of the encounters. First, Mr. Warman *voluntarily* appeared at the MSJPD on September 15th in response to receiving calls/voicemails from the Department, inviting him to meet in person; there is no indication he was forced to drive to campus and meet with the officers that day. (R. 18, PAGE ID # 321, ¶¶ 54–55.) Second, the Complaint does not claim Mr. Warman ever asked Koopman or Koo to leave the space(s) in which the alleged confinement(s) occurred, that such requests were denied, or that there were no available means of egress. Similarly, none of the indicators of a potential seizure were present during the September 15th conversation: there were only two (2) MSJPD officers present, there was no weapon displayed by either officer, neither officer physically touched Mr. Warman, and no

threatening language suggesting mandatory compliance with any "requests" the officers may have made of Mr. Warman that day is detailed in the Complaint. Rather, the Complaint merely alleges that the officers "told," "advised," or "volunteered" different statements to Mr. Warman, which although Mr. Warman may have found them to be offensive, such statements cannot, and do not, rise to the level of an unlawful seizure in violation of the Fourth Amendment. (*Id.* at # 321–22, ¶¶ 56–69.) There is no allegation that the two officers met with Mr. Warman for any reason other than because they, like Mr. Warman, were veterans—and one of whom (Koopman) was specifically a fellow Marin—and therefore thought a veteran-to-veteran conversation might help him better understand the benefits of Covid vaccination.

For similar reasons, Mr. Warman's complaints about Koopman [5] (1) approaching Mr. Warman while he stood outside one of the MSJ classrooms (*Id.* at # 323, ¶ 77) and (2) allegedly stationing himself outside Sister Karen Elliott's office while Mr. Warman met with Sister Karen (*Id.* at # 324, ¶ 83) do not give rise to claims concerning Fourth Amendment violations.

---

[5] Unlike Mr. Warman's concerns regarding the September 15th encounter inside the MSJPD for which both Koopman and Koo were present, only Koopman is alleged to have been involved with the other alleged police misconduct of which Mr. Warman complains.

"A police officer's mere questioning of an individual in an open space is not seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement." *State v. Gilliam*, 292 Neb. 770, 778 (2016). Further, campus police officers have a legal responsibility and right to monitor campuses to ensure the safety and wellbeing of the campus, its students, staff, and the general public with whom students might come into contact. *See McMichael v. James Island Charter Sch.*, 840 F. App'x 723, 727 (4th Cir. 2020) (concluding that maintaining school safety is a valid law enforcement function).

Mr. Warman does not contend that his freedom of movement was in any way restrained or compromised by virtue of Koopman's conversations with Mr. Warman outside of a MSJ classroom or his observations/monitoring outside of Sister Karen's office. Rather, the Complaint alleges only that Mr. Warman felt "intimidated" and "harassed" by Officer Koopman's lawful presence on campus. (R. 18, PAGE ID # 323–24, ¶¶ 77; 83.)

Simply put, Mr. Warman was not seized by Koopman (or Koo) in either of these situations. And since seizure is a necessary element to establish his Fourth Amendment claim, dismissal of such claims was appropriate, even without a determination of whether qualified immunity would have shielded Koopman or Koo from liability. *See Kisela v. Hughes,* 584 U.S. 100, 104 (2018).

f. Mr. Warman Failed to State a Plausible Claim Under the Rehabilitation Act.

Mr. Warman's Section 504 of the Rehabilitation Act of 1973 ("Section 504") claim was properly dismissed because he failed to adequately plead facts regarding his qualifying disabilities, how those disabilities had any bearing on his ability to obtain a Covid vaccine, or how each Appellee supposedly violated the Rehabilitation Act by discriminating against Mr. Warman on the basis of such qualifying disabilities. Moreover, as with his other claims, Mr. Warman failed to meet the pleading standards set forth in *Twombly* and *Iqbal*, as he did not specify the conduct of each defendant that allegedly violated Section 504.[6]

To prevail on a claim under Section 504, a party must show (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against based on his disability. *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). It was Mr. Warman's burden to demonstrate what specific accommodations were necessary and how those accommodations are connected to their ability to participate in activities. *Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp.

---

[6] *See, e.g.*, Paragraph 129 of the Second Amended Complaint ("*Defendants, at different times, in different ways, and in different combinations*, purposely discriminated against Mr. Warman based on his actual and/or perceived disabilities, thus causing him damage. *Alternatively*, Defendants' failure to reasonably accommodate Mr. Warman's perceived disabilities violated his rights under the Rehabilitation Act of 1973.").

3d 412, 434 (D. Mass. 2021). When there is an "insufficient nexus between the accommodation requests and plaintiff's purported disabilities," a party is unable to establish that his requested accommodation(s) were reasonable. *Id.*

In the context of Covid vaccinations, and as the district court properly noted, courts have found that "where the claimed disability is not a contraindication for the vaccine, the requested accommodation does not sufficiently relate to the claimed disability." (R. 37, PAGE ID # 704–05.) There are very few recognized medical contraindications to Covid-19 vaccinations, which include "a history of severe allergic reaction to the vaccines or certain vaccine ingredients," along with "autoimmune diseases, Guillain-Barre Syndrome, and Bell's palsy." (*Id.* at # 705 n.8.)

The Complaint asserts that Mr. Warman suffers (or previously suffered) from anxiety, depression, brain tumors, and internal injuries. (R. 18, PAGE ID # 311–12, 315, 323, 330, 333.) But the Complaint did not also discuss any medical contraindications impacting Mr. Warman directly. Nor did it explain how any of Mr. Warman's identified "disabilities" had any bearing on his ability to receive one of the Covid vaccinations, let alone in a way that limited one of his major life activities.[7]

---

[7] Mr. Warman's Brief actually asserts that it was a result of his *religious beliefs* (that purportedly denounced the "knowing use of the stem cells from aborted fetal tissue") that "Mr. Warman could not take any of the EUA vaccines available for use." (App. Doc. 35, P. 3.)

By failing to explain any sort of sufficient nexus between *his enumerated disabilities* and receiving a Covid vaccination—regardless of the effectiveness of, or general concerns about the safety risks associated with the then-available Covid vaccinations— Mr. Warman could not meet his burden, and therefore did not adequately plead his Rehabilitation claim.

Further, Mr. Warman could not possibly satisfy the "otherwise qualified" element necessary to prevail on a Section 504 claim. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). As with the other necessary elements, it is a plaintiff's burden to establish that he is qualified. *Shaikh v. Lincoln Mem'l Univ.,* 608 F. App'x 349, 353 (6th Cir. 2015).

Since Mr. Warman chose to voluntarily withdraw from MSJ *prior* to the established vaccination compliance deadline, he cannot simultaneously allege—nor does he attempt to claim—he was forced to stop attending MSJ solely *because of* his disabilities. As such, Mr. Warman, as a result of his voluntary withdrawal, was not "otherwise qualified" to continue attending the University, participate in clinical rotations at local hospitals, or receive (or retain) VA tuition benefits. *See, e.g.*, *Bowen v. Am. Hosp. Ass'n.*, 476 U.S. 610, 630 (1986). Indeed, Mr. Warman had every right to complete the then-current academic term that was nearing its end. So, while he could not begin the next term without complying with the Covid vaccination policy,

20

he would have banked additional academic credits that could transfer to a different school that had no such vaccination policy.

Dismissal with prejudice of Mr. Warman's Section 504 claim was therefore proper.

g. Mr. Warman Failed to State a Plausible Claim Under the Equal Protection Clause of the Fourteenth Amendment.

A facially valid Equal Protection claim requires a party to plead adequately that the government treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Snyder v. U.S.*, 990 F. Supp. 2d 818, 841 (S.D. Ohio 2014); *see also WCI, Inc. v. Ohio Dept. of Public Safety*, 774 F. App'x 959, 964 (6th Cir. 2019). Because Mr. Warman failed to both identify any similarly situated individuals or any such individuals who were treated more favorably than him, and defeat rational basis review, the trial court properly dismissed his Equal Protection claim.

Perhaps in recognition of the sound legal reasoning the district court provided when dismissing his Equal Protection claim, Mr. Warman now, for the first time, suggests a different, lower standard of review should have been applied to this claim. Specifically, Mr. Warman's Brief suggests that a Section 1983 selective-enforcement case can survive without a "similarly situated" comparator. (App. Doc.

21

35, P. 32.) Mr. Warman points to no Sixth Circuit decision to support this proposition.

Putting aside the fact that Mr. Warman failed to preserve for appeal this new argument by not raising it at any time in the proceedings below, the Court is nonetheless not bound to adopt the Second Circuit's unique approach to analyzing Equal Protection Claims. Instead, when applying the same standard this Court has consistently applied for several decades, it is clear that. Warman failed to sufficiently plead his Equal Protection claim against any of the Appellees, warranting affirmation of the district court's dismissal of this claim, as well.

## II. The District Court Did Not Abuse its Discretion By Granting Appellees' Motion to Dismiss Without First Allowing Mr. Warman to Further Amend His Complaint Following His Second Amended Complaint.

**a.** Standard of Review

A court's refusal to grant leave for a party to amend its pleading is reviewed under an abuse of discretion standard. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991).

b. The District Court Was Not Required to Grant Mr. Warman Further Leave to Amend.

Mr. Warman's contention that the district court erred by denying him leave to further amend his Complaint is without merit. Mr. Warman never sought leave to file another amended pleading, and a court has no obligation—and therefore does not abuse its discretion in failing—to grant relief that a party has not sought. *Tucker*

22

*v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) (citing *Sinay*, 948 F.2d at 1042). Of course, if a plaintiff fails to file a motion to amend or a proposed amendment, the court has the discretion to deny further opportunities to amend. *Crosby v. Twitter, Inc.,* 921 F.3d 617, 627-28 (6th Cir. 2019). Had Mr. Warman actually attempted to file such a motion, it would have been the fourth version of his Complaint.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, while leave to amend is generally granted when justice requires, it can be denied in cases of undue delay, bad faith, repeated failure to fix deficiencies, undue prejudice to the opposing party, or futility of amendment. *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Appellant in this case engaged in undue delay in the trial court, seeking and receiving extensions on numerous occasions, and failed in both his First and Second Amended Complaints to fix deficiencies.

Moreover, parties are not entitled to continuously update their pleadings in response to motions to dismiss. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating leave to amend may be denied due to "repeated failure to cure deficiencies by amendments previously allowed"). This is especially true when the dilatory party knew the basis for additional allegations before filing the original complaint. *See Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009)

(affirming lower court's denial of leave to amend where "the factual basis for the new claims existed at the beginning of the lawsuit").

Here, Mr. Warman filed a Complaint, an Amended Complaint, and a Second Amended Complaint in this case. (R. 1, 8, 18.) Instead of adding substantive facts to these complaints, Mr. Warman tried to survive dismissal by attaching a "Declaration" with "new" facts to his response to the motion to dismiss the Second Amended Complaint.

As a preliminary matter, it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) (citing *Pa.* ex rel. *Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Similarly, new factual allegations included in attachments or exhibits to a *response in opposition* to a motion to dismiss or support legal memorandum are not properly considered in ruling on a Rule 12(b)(6) motion. *See Weakley v. Homeland Sec. Sols., Inc.*, No. 3:14CV785 (REP-RCY), 2015 U.S. Dist. LEXIS 79350, *5-6 (E.D. Va. May 19, 2015). Yet this is exactly what Mr. Warman attempted to do via his response opposing Appellees' second motion to dismiss (and the "Declaration" attached thereto). And he did so after the district court had already cautioned Mr. Warman against attempting to amend his pleading via an opposition brief, and clearly stated that because he "included new allegations in his opposition [to Appellee's First Motion to Dismiss],

allegations which *might* state a claim," Mr. Warman was being "given one final chance to amend his complaint" before that court considered Appellees' arguments for dismissing the entire complaint. (*Order Denying Defs.' Joint Motion to Dismiss & Granting Leave to Amend the Complaint*, R. 17, PAGE ID # 306; 308.) Mr. Warman wasted that "final chance," failing to address in his Second Amended Complaint the problems identified in the Complaint and First Amended Complaint.

But still, nothing Mr. Warman presented via the (inappropriately filed) "Declaration"—which is presumably the same facts Mr. Warman would present via a fourth version of his Complaint—was based on any newly discovered evidence, wholly ignoring the lower court's directions. Rather, any arguments he would present via further amendment would be based on the same facts and documents that Mr. Warman was aware of before he filed his *first* Complaint. In fact, he had the benefit of having already read Appellees' *first* motion to dismiss— which contained nearly identical arguments as did Appellees' *second* motion to dismiss—at the time he prepared his Second Amended Complaint. (*See, e.g.*, Defs.' Motion to Dismiss Pl.'s First Complaint, R. 10, PAGE ID # 198–99.) Certainly, Mr. Warman should not be rewarded for his decision not to address the very same arguments that ultimately led to the dismissal of his Second Amended Complaint, as he could have easily done so without waiting for Appellees to file their second motion to dismiss.

Because the district court did not abuse its discretion in concluding that justice did not require another amendment, affirming the decision is appropriate.

## **CONCLUSION**

The district court appropriately based its decision to dismiss Mr. Warman's Second Amended Complaint on multiple different factors, including pleading deficiencies and lack of state action. Further, because Mr. Warman did not move to amend his Complaint between the time the Appellees filed their Motion to Dismiss the Second Amended Complaint and when the dismissal was ordered, the trial court did not abuse its discretion in denying him further leave to amend. This Court should therefore affirm the district court's well-reasoned decision, overruling Plaintiff-Appellant's Assignments of Error.

Respectfully submitted,

/*s*/ Ilana L. Linder

Ilana L. Linder     (0095622)
Timothy M. Burke    (0009189)
Micah E. Kamrass   (0092756)
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Fax: (513) 721-4268
Email:   ilana.linder@manleyburke.com
           tburke@manleyburke.com
           mkamrass@manleyburke.com
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Ilana L. Linder
Ilana L. Linder    (0095622)

## CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This Brief has been prepared in proportional typeface using Times New Roman 14-point font. It contains 4,944 words.

/s/ Ilana L. Linder
Ilana L. Linder    (0095622)

# ADDENDUM
(Designation of Relevant Documents)

| Description | Record Docket No. | Relevant Page ID Range | Date Filed |
|---|---|---|---|
| Pl.'s Complaint | 1 | 1–29 | 04/28/2022 |
| Pl.'s First Amended Complaint | 8 | 85-120 | 07/06/2022 |
| Defs.' Motion to Dismiss Pl.'s First Amended Complaint | 10 | 198–199 | 08/30/2022 |
| Pl.'s Response in Opp. to Motion to Dismiss | 15 | 242 | 12/05/2022 |
| Order Denying Defs.' Motion to Dismiss & Granting Leave to Amend the Complaint | 17 | 306–308 | 01/25/2023 |
| Pl.'s Second Amended Complaint | 18 | 311–333 | 02/15/2023 |
| Defs.' Motion to Dismiss Second Amended Complaint | 22-1 | 353–410 | 02/27/2023 |
| Order Granting in Part Defs.' Motion to Dismiss | 37 | 698–705 | 01/03/2024 |