# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **MATTHEW WARMAN,** | : | **Appeal No. 24-3042** |
| | : | |
| **Plaintiff - Appellant,** | : | **District Court No. 1:22-CV-00229** |
| | : | |
| **v.** | : | |
| | : | **On Appeal from Southern District** |
| **MOUNT ST. JOSEPH UNIVERSITY,** *et al.* | : | **of Ohio, Western Division** |
| | : | |
| | : | |
| **Defendants - Appellees.** | : | |

## REPLY BRIEF OF PLAINTIFF-APPELLANT MATTHEW WARMAN

ATTORNEYS FOR
PLAINTIFF-APPELLANT

Ronald A. Berutti (NJ 023361992/*PHV)*
MURRAY-NOLAN BERUTTI LLP
100 E. Hanover Avenue, St. 401
Cedar Knolls, New Jersey 07927
ron@murray-nolanberutti.com
*Attorney for the Plaintiff-Appellant*

Matthew S. Okiishi (00096706)
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Ste 225
Cincinnati, Ohio 45245
(513) 943-6659
(513) 943-6669 – fax
matt@finneylawfirm.com
*Local Counsel for the Plaintiff-Appellant*

ATTORNEYS FOR
DEFENDANTS-APPELLEES

Ilana L. Linder (0095622)
Timothy M. Burke (0009189)
Micah E. Kamrass (0092756)

MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Fax: (513) 721-4268
ilana.linder@manleyburke.com
tburke@manleyburke.com
 mkamrass@manleyburke.com
*Attorneys for the Defendants-Appellees*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

Argument ................................................................................................................... 3

I.    Defendants Have Failed to Challenge the Qualified Immunity Arguments and Ignored Facts Supporting that a Wrongful Arrest of Mr. Warman Had Occurred, such that they are not Immune for their Fourth Amendment Violations. ..................................................... 3

II.    Defendants have Failed to Respond to Mr. Warman's Substantive Arguments as to why MSJPD is *Sui Juris*. ................................................................................. 6

III.  It is Appropriate to Name both MSJU and MSJPD as Defendants for violating Mr. Warman's Civil Rights. ................................................................................... 7

IV.  Mr. Warman Refuted the District Court's Determination that the Second Amended Complaint was an Impermissible Group Pleading and Demonstrated How the District Court did not Apply Sixth Circuit Law on the Subject. ........................................... 9

V.    Mr. Warman States a Claim Under Section 504 of the Rehabilitation Act. .................. 10

VI.  Defendants did not Substantively Address Mr. Warman's Equal Protection Arguments. ...................................................................................................... 11

VII. To the Extent that and of Mr. Warman's Arguments Falls Short of Success, Leave Should be Granted to Replead. ........................................................................... 12

CONCLUSION ...................................................................................................... 13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .............................. 14

CERTIFICATE OF SERVICE ................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cooper v. American Employers' Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961) ..........5

*Davis v. Mississippi*, 394 U.S. 721, 726-727 (1969) .................................................5

*Desyllas v. Bernstine*, 351 F.3d 934, 940 (9th Cir. 2003) ..........................................6

*Dunaway v. New York,* 442 U.S. 200, 227 n.6 (1976)............................................1, 6

*Fleck v. Trs. Of Univ. of Penn.*, 995 F.Supp.2d 390, 402 (E.D. Pa. 2014)................7

*Hoggard v. Rhodes*, ___ U.S. ___, 141 S.Ct. 2421, 2422 (2021) .............................7

*Jones .v City of Elyria*, 947 F.3d 905, 922 (6th Cir. 2020).........................................4

*Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 n.1 (6th Cir. 2011) .....................4

*Pyke v. Cuomo*, 258 F.3d 107, 108-109 (2d Cir. 2001)...........................................12

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ................................................................3

*Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)............................3

*Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996) ..........................12

*Terry* v. *Ohio*, 392 U.S. 1, 16 (1968).........................................................................5

*United States v. Morgan*, 936 F.2d 1561, 1566 (10th Cir. 1991) .............................6

*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)...........................................9

**Other Authorities**

ALI, Model Code of Pre-Arraignment Procedure § 2.01 (3) and commentary, p. 91
    (Tent. Draft No. 1, 1966)...............................................................................6

*Fed. R. Civ. P.* 10(c)................................................................................................10

## PRELIMINARY STATEMENT

Defendants ask this Court to essentially ignore the brief in support of the appeal and to apply the same review as occurred in the District Court. They ignore arguments, ignore facts, and misdirect as to the law. In the end, what is clear is that defendants do not have substantial grounds to oppose the appeal.

Specifically, Defendants have failed to address the argument of Matthew Warman ("Mr. Warman") regarding qualified immunity. (Doc. 35, Page 28-30) Pursuant to Ohio law, Defendants Koo and Koopman are state actors. Defendants further argue that Mr. Warman was not arrested, but ignore his well-pleaded facts alleging that he was (1) taken into a back room of the campus police station and (2) not permitted to leave. (R. 18, PAGEID 321; R. 29-1, PAGEID 609-10). Despite United States Supreme Court precedent to the contrary, Defendants advance the specious argument that Mr. Warman's voluntary appearance at the police station proscribes an arrest. (Db 15) However, the United States Supreme Court has specifically recognized that an arrest may occur when an ordinary citizen voluntarily comes to the police station and believes that he is not free to leave. *Dunaway v. New York,* 442 U.S. 200, 227 n.6 (1976). Finally, Defendants assert that the Mount St. Joseph's Police Department ("MSJPD") is not *sui juris*, (Db 8-10), despite Ohio law holding to the contrary. (Br.15-19) Finally, Defendants choose to overlook Mr. Warman's arguments as to why Mount St. Joseph's University ("MSJU") and the

1

individual defendants effectuating its vaccine policy through implementation of police enforcement actions are state actors for such reason. (Doc. 35, Page18-19).

Defendants have failed to provide this Court any legal basis to hold that: (1) Mr. Warman was not arrested by state actors performing a public function for a campus police department which is *suit juris*; and (2) these state actors did not violate Mr. Warman's Fourth Amendment right to be free from unreasonable searches and seizures when they refused to permit him to leave the police station after they badgered him to report to the station. As such, the decision below must be reversed.

Defendants raise no argument to support the notion that the Trial Court's finding that Mr. Warman's Third Amended Complaint constitutes "impermissible group pleading," (Db7-8), was contrary to Sixth Circuit precedent. (Doc. 35, Page31-33) Nor do they effectively refute that Mr. Warman has properly alleged there to be a violation of Section 504 of the Rehabilitation Act ("Section 504"). (Doc. 40, Page18-21) Lastly, Defendants offer no compelling reason for why the Court should not look to the Second Circuit's approach to analyzing Equal Protection Claims as a supplement to Sixth Circuit precedent. (Doc. 40, Page 21-22).

For such reasons, reversal of the District Court is merited and to the extent that any of Mr. Warman's claims remains dismissed, he should be permitted to replead.

**Argument**

## I. Defendants Have Failed to Challenge the Qualified Immunity Arguments and Ignored Facts Supporting that a Wrongful Arrest of Mr. Warman Had Occurred, such that they are not Immune for their Fourth Amendment Violations.

Mr. Warman has disputed the District Court's holding that regardless of its other rulings, Defendants Koopman and Koo were entitled to qualified immunity. (Doc. 35, Page28-30) Defendants have failed to respond to such arguments by Mr. Warman. Moreover, Defendants have chosen to ignore the key fact pleading related to qualified immunity, specifically that Mr. Warman was not free to leave when being held by police and, thus, was wrongfully arrested.

The District Court's qualified immunity determination is to be reviewed *de novo*. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Id.* In evaluating a qualified immunity defense, the Court first must examine the issue in a light most favorable to the party asserting an injury in determining whether the officer's conduct violated a constitutional right, and second must determine whether such right is clearly established. *Id.* (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). While the Court of Appeals is not required to treat an unopposed argument as requiring reversal of the District Court's decision to grant qualified immunity, *Kennedy v. City of Villa*

3

*Hills*, 635 F.3d 210, 214 n.1 (6th Cir. 2011), a party's failure to respond to such an argument may be viewed as a concession of error to the appellant. *Jones .v City of Elyria*, 947 F.3d 905, 922 (6th Cir. 2020) (Rogers, Judge, concurring).

Defendants' argument that Mr. Warman was not arrested ignores Mr. Warman's allegation that Koopman and Koo would not allow him to leave while he was being interrogated and were berating him in the back room of the MSJPD building for over an hour. (R. 37, PAGEID 321; R.29-1, PAGE ID 609-09; R. 18, PAGEID 321; R. 29-1, PAGEID 609-10)[1]

---

[1]As also noted, in response to Defendants' supplementing the pleadings with extraneous documents in support of their motion to dismiss, Mr. Warman argued that the summary judgment standard had to be employed and submitted his own Declaration in opposition. Such Declaration included the specific assertion that Mr. Warman was unequivocally told by Koopman and Koo that he could not leave. (Doc. 35, Page20 n.4; (R. 29-1, PAGEID 609; R. 37, PAGEID 689) While Defendants berate Mr. Warman for submitting such supplemental Declaration, (Doc. 40, Page 24-25), they again lack transparency by failing to point out that such submission was made because Defendants themselves had added alleged facts to the record on the motion which Mr. Warman asserted required the summary judgment standard to be applied. As argued by Mr. Warman (Doc. 35, Page20 n.4), and contrary to Defendants' arguments (Doc. 40, Page 22-26), in light of the critical fact contained in Mr. Warman's Declaration which was raised to counter Defendants' own supplement, it was an abuse of discretion for the District Court to refuse consideration of such supplemental submissions or permit amendment since Mr. Warman's supplement asserting that he was told by police that he could not leave would have saved his pleading from the District Court's dismissal as to the issue of wrongful arrest. *See Cooper v. American Employers' Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961) (amendments to pleadings should be liberally granted because it is a general "principle that cases should, as far as possible, be determined on their merits and not on technicalities.")

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry* v. *Ohio*, 392 U.S. 1, 16 (1968). "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" *Davis v. Mississippi*, 394 U.S. 721, 726-727 (1969).

Nor does Mr. Warman's voluntary appearance mitigate against a finding of arrest. As the Supreme Court has noted, a "request to come to police station 'may easily carry an implication of obligation, while the appearance itself, unless clearly stated to be voluntary, may be an awesome experience for the ordinary citizen.'" *Dunaway v. New York*, 442 U.S. 200, 207 (1979) (*quoting* ALI, Model Code of Pre-Arraignment Procedure § 2.01 (3) and commentary, p. 91 (Tent. Draft No. 1, 1966)). Neither *Desyllas v. Bernstine*, 351 F.3d 934, 940 (9th Cir. 2003) (plaintiff twice allowed to leave), nor *United States v. Morgan*, 936 F.2d 1561, 1566 (10th Cir. 1991) (seizure occurred where defendant yielded to police stop and questioning), both cited by Defendants, is on point here and, thus, are of no moment.

Thus, Mr. Warman adequately plead that he was arrested when Koopman and Koo did not allow him to leave for over an hour while they berated and interrogated him at the MSJPD station. Being an ordinary citizen where police had called him to the station, brought him to a back room, and berated him, Mr. Warman reasonably believed that he was not free to leave (putting aside the supplemental Declaration wherein Mr. Warman swore that he was told that he could not leave, which leaves no doubt about his arrest). Taken in a light most favorable to Mr. Warman, he sufficiently alleges that he was arrested by Koopman and Koo at MSJPD in violation of his 4th Amendment constitutional rights, as applied to the state through the Fourteenth Amendment. Thus, the decisions that Mr. Warman did not plead such a violation of his rights under 42 U.S.C. § 1983 and that Koopman and Koo are entitled to qualified immunity must be reversed.[2]

## II.     Defendants have Failed to Respond to Mr. Warman's Substantive Arguments as to why MSJPD is *Sui Juris*.

Mr. Warman detailed why pursuant to Ohio law, MSJPD is acting as a "public office" that may be compelled to answer to process and, thus, is *sui juris*. (Doc. 35,

---

[2] Mr. Warman reiterates (Doc. 40, Page 30) that he further relies on Justice Thomas' concurrence in *Hoggard v. Rhodes*, ___ U.S. ___, 141 S.Ct. 2421, 2422 (2021) (Thomas, J., concurring), and preserves for further appeal the argument that campus police officers who are not engaged in exigent circumstances are not entitled to qualified immunity at the same level as police officers engaged in exigent circumstances, if at all.

Page15-19) As is their wont, Defendants provided no analysis whatsoever with respect to such arguments and instead repeated the basis for the holding by the District Court. Only one case was cited, *Fleck v. Trs. Of Univ. of Penn.*, 995 F.Supp.2d 390, 402 (E.D. Pa. 2014), which is inapposite. *Fleck* is a non-binding District Court case from the Third Circuit, and the 'officer' in question was not performing a police function, but rather was working only as a campus security guard. Moreover, unlike in the case *sub judice*, there was no question of state laws existing which conferred *sui juris* status on the campus police department as there is here, with *ORC* 1713.50(B-C), which makes MSJPD a commissioned law enforcement agency of Ohio. Having failed to address Mr. Warman's substantive arguments in such regard and given Mr. Warman's legal basis springing from Ohio law, Defendants should be considered to have conceded the point that as a matter of law, MSJPD is *sui juris*. Since Koo and Koopman were effectuating official policy when arresting Mr. Warman and subsequently harassing him with respect to the COVID-19 vaccine mandate, MSJPD is liable for their actions whereby they violated Mr. Warman's constitutional rights.

**III.** **It is Appropriate to Name both MSJU and MSJPD as Defendants for violating Mr. Warman's Civil Rights.**

Defendants' rebuttal to Mr. Warman's argument that MSJU is a state actor relies on the premise that MSJPD is not *sui juris* and, thus, its ranking officers were

not state actors. (Doc. 40, Page 10-13). However, as set forth above, MSJPD is indeed capable of being sued for the acts of its police, who are state actors.

Mr. Warman alleged that Koopman and Koo, who arrested and berated Mr. Warman while enforcing the school's vaccine mandate (R.18, PAGEID 321; R. 29-1, PAGEID 609-10; R.19, PageID 321-22), acted at the behest of the MSJU Defendants. Thus, Koopman and Koo were enforcing MSJU's official vaccine policy through MSJPD. Since MSJPD is *sui juris* per Ohio law, Koopman and Koo are state actors. Thus, the MSJU Defendants used a government entity, MSJPD, to undertake functions that are not historically governmental--enforcing the MSJU vaccine mandate through force of the state, and thus was itself a state actor since MSJU used "powers which are traditionally exclusively reserved to the state," *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992), to enforce its mandate. The use of a "public office" police department for enforcement is a traditional state act has caused MSJU and those acting under it for such purposes to be state actors. Indeed, Defendants concede that MSJU should be held liable for any misconduct of MSJPD. (Doc. 40, Page 9) Thus, because MSJPD is *sui juris*, it was appropriate for Mr. Warman to name both MSJU and MSJPD as defendants on all Counts concerning violations of Mr. Warman's civil rights.[3]

---

[3] Since issues related to Mr. Warman's state claims are not before this Court, he makes, without prejudice he makes no response to Defendants' arguments about his state law claims. (Doc. 40, Page 9-10)

Since MSJPD is *sui juris,* Defendants' opposition to MSJU being classified as a state actor falls apart. For instance, Defendants attempt to make hay out Mr. Warman's brief wherein, with respect to the 'state actor' tests, Mr. Warman writes "application of such tests is irrelevant." (Doc. 40, Page 11; App.Doc. 35. p. 18) However, what Mr. Warman is arguing is that there is no reason to apply such tests to MSJU in a vacuum, as was done by the District Court, since MSJPD is a state through which MSJU operated, also as a state actor.

**IV.  Mr. Warman Refuted the District Court's Determination that the Second Amended Complaint was an Impermissible Group Pleading and Demonstrated How the District Court did not Apply Sixth Circuit Law on the Subject.**

Defendants fallaciously claim that "Mr. Warman's Brief wholly ignores that the Second Amended Complaint ... was dismissed, in whole or in part, due to impermissible group pleading." (Doc. 40, Page 7). However, Mr. Warman dedicated an entire Point to his Brief on the issue. (Doc. 35, Pages 31-33) The mere fact that Mr. Warman provided 118 paragraphs of detailed fact allegations in his Verified pleading does not a "shotgun pleading" make. These allegations were stated and reincorporated in each Count by utilizing the "repeat and reallege" process permitted by *Fed. R. Civ. P.* 10(c). Thus, once again, Defendants' Brief completely misses the mark on this point.

**V.** **Mr. Warman States a Claim Under Section 504 of the Rehabilitation Act.**

Defendants assert that Mr. Warman "did not specify the conduct of each defendant that allegedly violated Section 504." However, the Second Amended Complaint is rife with allegations about how each of the MSJU Defendants acted to aid in the discrimination against him, in part, because he needed a medical exemption from the COVID-19 vaccine due to his numerous serious health issues. Mr. Warman's Medical Doctor provided an exemption opinion to the MSJU Defendants in support of such exemption, specifying that Mr. Warman had "a medical need to avoid taking the COVID-19 vaccines," (R. 18. PAGEID 320, ¶ 49).

Contrary to Defendants' thesis, (Doc. 35, Page19), Section 504 does not require accommodations only in response to "recognized contraindication[s] to Covid-19 vaccinations." Indeed, Mr. Warman plead that the vaccines were experimental in nature and only approved for emergency use. As of the date that MSJU terminated its vaccine mandate, 13,273 deaths were reported to have been caused by the vaccines. (R. 18. PAGEID 317-319, ¶¶ 32-42). Thus, in light of the opinion of Mr. Warman's Medical Doctor, Defendants were obligated to consider accommodations. Defendants easily could have permitted Mr. Warman to be exempted from the policy for his final semester of coursework when he would have been entirely off campus performing a clinical at a hospital which was providing provided vaccine exemptions. Instead, the MSJU Defendants refused to allow Mr.

Warman to obtain an exemption through the hospital and blocked his exemptions at the school, making it impossible for him to complete his schooling, while all the while harassing Mr. Warman including through the efforts of Koo and Koopman, as well as involving the FBI.

Each of the MSJU Defendants was individually alleged to have used Koo and Koopman to impose school policy on Mr. Warman despite his medical need to avoid the vaccines. (R. 18, PAGEID 313-314, ¶¶11-14). Further, they each were alleged to have engaged in acts in furtherance of the policy, including involving an FBI agent plant falsehoods in Mr. Warman's psychiatrist's records, to prevent Mr. Warman from obtaining his religious and medical exemptions. (R. 18, PAGEID 327-330, ¶¶94, 101-113). All such acts manifestly contradicted the obligation of such defendants to provide Mr. Warman with a reasonable accommodation for his medically necessary exemption. Thus, Mr. Warman has properly plead a claim under Section 504.

## VI.   Defendants did not Substantively Address Mr. Warman's Equal Protection Arguments.

Mr. Warman alleges that he was treated differently than all others on campus. Mr. Warman detailed the Second Circuit's case of *Pyke v. Cuomo*, 258 F.3d 107, 108-109 (2d Cir. 2001), which Mr. Warman contends does not require specific comparators in a case such as his. Rather than substantively address the argument,

Defendants simply asserted that this Court is not bound to accept such an approach. (Doc. 40, Page 22) Thus, again, Defendants essentially refuse to engage in responding to Mr. Warman's Brief, but rather implicitly seek to have this Court affirm the District Court without analysis, when Mr. Warman makes a cogent argument to the contrary. For Equal Protection and for all other matters defendants have refused to address, such an approach would violate the requirement that the motion to dismiss must be reviewed *de novo. Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996).

## VII. <u>To the Extent that and of Mr. Warman's Arguments Falls Short of Success, Leave Should be Granted to Replead.</u>

Defendants wish this Court to believe that Mr. Warman unreasonably delayed this matter by seeking adjournments for filings. (Doc. 40, Page 23) Yet all extensions were granted by the District Court, and Defendants have demonstrated no prejudice. Thus, to the extent that this Court may rule against Mr. Warman on an issue-- especially considering that the Second Amended Complaint is plead on the basis of Mr. Warman's current arguments that MSJPD is a state actor that is *sui* juris--this Court should exercise its discretion to permit Mr. Warman to file a Third Amended Complaint in the interests of justice. Indeed, in a case such as this where Mr. Warman is a disabled Marine veteran who so greatly suffered as a result of Defendants overreaching in aid of seeking 100% compliance with the MSJU vaccine

mandate, justice cries out for Mr. Warman to get every reasonable opportunity to have his day in Court.

**CONCLUSION**

Based on the foregoing, the Decision of the District Court should be reversed, with all claims being reinstated, including state claims which were dismissed without prejudice due to the District Court declining to continue the exercise of supplemental jurisdiction. To the extent appropriate to clarify any points, Mr. Warman should be granted leave to replead in the interests of justice.

Respectfully submitted,

/s/ *Ronald A. Berutti*
Ronald A. Berutti (NJ 023361992/*Pro Hac Vice)*
MURRAY-NOLAN BERUTTI LLP
100 E. Hanover Avenue, St. 401
Cedar Knolls, New Jersey 07927
ron@murray-nolanberutti.com
*Attorney for the Plaintiff-Appellant*

/s/ *Matthew S. Okiishi*
Matthew S. Okiishi (00096706)
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Ste 225
Cincinnati, Ohio 45245
(513) 943-6659
(513) 943-6669 – fax
matt@finneylawfirm.com
*Local Counsel for the Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of *Fed. R. App. P.* 32(a)(7)(B) because, excluding the parts of the document exempted by *Fed. R. App. P.* 32(f) and *Fed. R. App. P.* 32(a)(7)(A). This document contains 2,927 words.

2. This document complies with the typeface requirements of *Fed. R. App. P.* 32(a)(5) and the type-style requirements of *Fed R. App. P.* 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Business 365 in 14-point font and Times New Roman.

*/s/ Matthew S. Okiishi*
Local Counsel for Plaintiff-Appellant                    Dated:  August 14, 2024

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was electronically filed. Notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Ronald A. Berutti_____
Ronald A. Berutti (NJ 023361992/*Pro Hac Vice*)